UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC OESCH,

    Plaintiff,

v.

    Case No. 1:22-cv-430

    Hon. Ray Kent,

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for supplemental security income (SSI).

The present case involves plaintiff's application for SSI filed on May 29, 2019, which alleges a disability onset date of March 30, 2019. PageID.46.[1] In his present application, plaintiff identified his disabling conditions as congestive heart failure, autism spectrum disorder, borderline intellectual function IQ 70, atrial fibrillation, cardiomegaly, status post myectomy, decreased processing speed, anxiety, and depression. PageID.345. The record reflects that he attended special education classes from 1989 through 1991, completed the 10th grade, and had no past relevant work. PageID.59, 346. The Administrative law judge (ALJ) entered a decision denying benefits on May 28, 2021. PageID.46-61. This decision, which was later approved by

---

[1] The ALJ noted that plaintiff had "two prior unfavorable decisions dated January 29, 2013 and September 6, 2018." PageID.46.

1

the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of May 29, 2019. PageID.49. At the second step, the ALJ found that plaintiff had severe impairments of: autism spectrum disorder with intellectual disorder; history of cardiomegaly; atrial fibrillation; major depressive disorder; generalized anxiety disorder; congestive heart failure; obesity; and obstructive sleep apnea. PageID.49. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: limited to simple, routine tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions and routine workplace changes; can tolerate no more than incidental contact with the public and only occasional interaction with co-workers and supervisors; no climbing ladders, ropes, or scaffolds; can perform other postural movement occasionally; and have no exposure to moving machinery or unprotected heights.

PageID.53. The ALJ also found that plaintiff has no past relevant work. PageID.59.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.59-61. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work in the national economy such as housekeeper cleaner (221,000 jobs), mail clerk (13,000 jobs), and hand packager (4,000 jobs). PageID.59-61. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 29, 2019 (the date he filed the application) through May 28, 2021 (the date of the decision). PageID.61.

### III.   DISCUSSION

Plaintiff raised one error:

**The decision lacks substantial evidence to deny benefits when it inaccurately describes the claimant's mental limitations and rejects the vocational expert (VE) testimony that he cannot perform competitive employment.**

The issue before the Court is whether plaintiff can perform competitive employment. Plaintiff seeks a reversal of the ALJ's decision and an award of benefits because he cannot engage in competitive employment. In *Sanders v. Commissioner of Social Security*, No. 2:17-CV-0605-KJN, 2018 WL 3322905 (E.D. Cal. July 5, 2018), the Court explained the term "competitive work":

> As the Commissioner concedes, "competitive" is a term of art in the agency's regulations and rulings, which distinguish competitive work from work performed in structured or sheltered settings. *See* Social Security Ruling ("SSR") 96-8p, at *6 (setting forth "[w]ork-related mental activities generally required by competitive, remunerative work"); 20 C.F.R. § 416.973 (work done under special conditions may not constitute substantial gainful activity).

*Sanders*, 2018 WL 3322905 at *2.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that

5

the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.*

Here, the ALJ posed a hypothetical question to the VE, Christine Fontaine, which involved a person with the same RFC as plaintiff. PageID.91-92. In response, VE Fontaine testified that such a person could perform work in the national economy as a housekeeper cleaner (221,000 jobs), mail clerk (13,000 jobs), and hand packager (4,000 jobs). PageID.92. The ALJ accepted the VE's testimony and incorporated it into her decision ("Based upon the vocational expert's professional experience and training, as indicated by her resume in the file, the undersigned determines this is a proper basis for her opinion and accepts her testimony in accordance with SSR 00-4p."). PageID.60.

However, the VE also testified regarding the effects of plaintiff's low processing speed. By way of background, plaintiff addressed relevant findings in a 2015 psychological evaluation:

> As part of his application, the SSA considered a 2015 psychological evaluation by Dr. Dorothy Berg. (PageID.1202-1206). That evaluation included IQ testing which produced scores of Verbal Comprehension 83, Perceptual Reasoning 88, Working Memory 77, Processing Speed 68, and Full Scale IQ of 76. (PageID.1203). Dr. Berg attached a bell curve chart which graphically demonstrates Mr. Oesch's scores. His Full Scale IQ of 76 falls in the Borderline region. His Processing Speed of 68 falls in the Extremely Low region. (PageID.1206).

Plaintiff's Brief (ECF No. 12, PageID.2754-2755).

Plaintiff's counsel cross-examined VE Fontaine about the impact of plaintiff's low processing speed. The VE testified that this mental limitation would probably require a work coach which would be inconsistent with competitive employment:

6

> Q      Okay. And do you have experience placing individuals with physical and mental limitations into competitive work situations?
>
> A      I never worked as a placement person. I worked as a vocational evaluator. But having worked with them in a vocational evaluation setting, I was able to make recommendations for job placement that were consistent with their skills, abilities and preferences.
>
> Q      And have you had the opportunity and expert – or experience to work with people with autism spectrum disorder and borderline intellectual functioning?
>
> A      Yes.
>
> Q      All right. And is the person's processing speed scores one of the things you would consider when trying to determine a person's ability or suitable competitive work placement for them?
>
> A      Yes.
>
> Q      And if a person's processing speed was more than two standard deviations below the mean, in the 60s, that would present a great difficult -- so meaning between, I think, the first and second percentile with the -- of the general population with regard to processing speed. That would be a large hurdle to finding suitable employment that was competitive, correct?
>
> A      Yes. It probably would require the support of vocational rehabilitation professionals to find a work coach; the individual [sic] and support them on an ongoing basis.
>
> Q      And that kind of vocational support is not consistent with competitive employment, is it?
>
> A      That is correct.

PageID.94-95.

The ALJ rejected this portion of the VE's testimony because it was outside of the scope of the VE's expertise and counsel did not pose the question in vocational terms:

> In response to questions posed by the claimant's representative, the vocational expert testified she worked as a vocational evaluator in making recommendations for job placement consistent with a person's skills, abilities, and preferences. She testified she had experience working with individuals who had autism and borderline intellectual functioning. She testified she would consider an individuals [sic] processing speed when determining a recommendation for

7

>placement.  She testified that an individual with a processing speed of two standard deviations below the mean, in the 60's, would likely need vocational rehabilitation support, which is not consistent with competitive employment (Hearing Audio at 2:45:44).
>
>The undersigned does not find this persuasive. HALLEX [*Hearings, Appeals and Litigation Law Manual*] I-2-6-74-C explains that vocational experts are not permitted to respond to questions on medical matters or to draw conclusions not within their area of expertise. In this case, the vocational expert is not an expert in interpreting the impact of IQ scores or results of psychological testing. Furthermore, the vocational expert only considered the impact of an individual with a processing speed of two standard deviations below the mean, in the 60's, as stated by the claimant's representative. However, this is one factor in isolation. The vocational expert could not consider other factors that might affect an individual's ability to engage in competitive employment, such as their adaptive functioning. Finally, the claimant's representative did not pose the question in vocational terms. Therefore, the vocational expert was using her own understanding of how processing speed would affect an individual's performance.

PageID.60-61.

The cited portion of HALLEX, I-2-6-74-C, states in pertinent part:

>The ALJ will not permit the VE to respond to questions on medical matters or to draw conclusions not within the VE's area of expertise. For example, the VE may not provide testimony regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law.

HALLEX, I-2-6-74-C.  HALLEX "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Commissioner of Social Security*, 539 F.3d 395, 397 (6th Cir. 2008).  "While the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Bedunah v. Commissioner of Social Security*, No. 1:19-cv-1054, 2021 WL 1049872 at *8 (W.D. Mich. March 19, 2021) (citing *Bowie*, 539 F.3d at 399 (observing that the procedural guidance in HALLEX is "not binding on this court")).

Here, the ALJ applied HALLEX I-2-6-74-C to reject VE Fontaine's testimony because the testimony "interpret[ed] the impact of IQ scores or results of psychological testing."

8

The Court disagrees. VE Fontaine did not respond to medical matters or draw conclusions not within her area of expertise, such as determining plaintiff's residual functional capacity or resolving an ultimate issue of fact or law. She has a master's degree in rehabilitation counseling, is a certified rehabilitation counselor, and has past experience as a vocational evaluator and in pre-employment testing for employers. *See* PageID.426-428. VE Fontaine's testimony addressed whether plaintiff's low processing speed score would require an accommodation (a work coach) and whether that would be consistent with competitive employment. In the Court's opinion, this testimony was within her area of expertise.

The next question is whether plaintiff should be awarded benefits based upon VE Fontaine's testimony. Here, plaintiff had a processing speed of 68. PageID.1203. The VE's testimony established that a person with a processing speed in the 60s would *probably* require a work coach. However, the VE did not definitively state that a person with plaintiff's processing speed would require a work coach. In this regard, the Court notes that VE Fontaine found that a person with plaintiff's RFC – without reference to the need for a work coach – could perform over 200,000 jobs in the national economy.

Based on this record, the Court concludes that the ALJ erred in finding that VE Fontaine's testimony regarding employment limitations due to a low processing speed was outside of the area of her expertise. However, while the VE's testimony established that assignment of a work coach is inconsistent with competitive employment, the VE was not definitive as to whether plaintiff requires a work coach due to his low processing speed. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be directed to determine whether plaintiff requires a work coach due to his low processing speed.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  The VE established that assigning plaintiff a work coach is inconsistent with competitive employment.  On remand, the Commissioner is directed to determine whether plaintiff requires a work coach due to low processing speed.  A judgment consistent with this opinion will be issued forthwith.

Dated: September 18, 2023             /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge